**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BARBARA GOUDY-BACHMAN and** | : | **CIVIL ACTION NO. 1:10-CV-763** |
| **GREGORY BACHMAN** | : | |
| | : | **(Judge Conner)** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES DEPARTMENT OF** | : | |
| **HEATH AND HUMAN SERVICES,** | : | |
| **KATHLEEN SEBELIUS, in her official** | : | |
| **capacity as the Secretary of the United** | : | |
| **States Department of Health and** | : | |
| **Human Services; UNITED STATES** | : | |
| **DEPARTMENT OF THE TREASURY,** | : | |
| **and TIMOTHY F. GEITHNER, in his** | : | |
| **official capacity as Secretary of the** | : | |
| **United States Department of the** | : | |
| **Treasury** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court is a challenge to the Patient Protection and

Affordable Care Act ("the Act"), Pub. L. No. 111-148, 124 Stat. 119 (2010), as

amended by the Health Care and Education Affordability Reconciliation Act of

2010, Pub. L. No. 111-152, 124 Stat. 1029. It is one of many actions filed across the

country challenging the constitutionality of the Act. Plaintiffs, Barbara Goudy-

Bachman and Gregory Bachman ("the Bachmans"), allege that § 1501 of the Act

("the individual mandate"), which requires all individuals (subject to certain

exclusions), beginning January 1, 2014, to purchase and maintain qualifying health

insurance, is an unconstitutional exercise of Congress's authority under the

Commerce Clause of the United States Constitution. The Bachmans institute this action against the United States Department of Health and Human Services, the Secretary of the Department of Health and Human Services, Kathleen Sebelius, in her official capacity, the United States Department of the Treasury, and the Secretary of the Department of the Treasury, Timothy F. Geithner, in his official capacity (collectively "the government"), as those individuals and governmental bodies responsible for the administration and enforcement of the Act.

The government filed the instant motion to dismiss (Doc. 11) for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). FED. R. CIV. P. 12(b)(1), (b)(6). The government avers that plaintiffs lack standing to challenge the individual mandate, that the challenge is not ripe for adjudication, that plaintiffs are barred from asserting a pre-enforcement challenge against the individual mandate by the Anti-Injunction Act, and that Congress lawfully exercised its Commerce Clause powers. The court will proceed in two parts. In this opinion, the court will address the jurisdictional challenges raised by the government. A separate opinion will issue with respect to the Rule 12(b)(6) challenge.

# I.   BACKGROUND[1]

On March 23, 2010, President Barack Obama signed into law the Patient Protection and Affordable Care Act.  Pub. L. No. 111-148, 124 Stat. 119 (2010).  The lofty goals of the law are to mend the nation's broken health care system and curtail the spiraling costs of health care, to provide affordable health insurance, and to reduce the number of uninsured individuals.  To underscore the urgent need for this legislation, Congress made numerous findings with respect to health insurance and health services markets, with particular emphasis on the rising costs associated with health care.  For example, Congress found that national health expenditures in 2009 represented 17.6 percent of the economy, and such expenditures will increase dramatically within the next ten years.  See id. §§ 1501(a)(2)(B), 10106(a).  In 2008, the uncompensated medical costs of the uninsured amounted to $43 billion dollars.  Id. § 10106(a).  Health care providers pass on these unpaid costs to insurers, who in turn, pass on the cost to the insured in the form of higher premiums.  Id. §§ 1501(a)(2)(F), 10106(a).  The resulting higher premiums increases the number of uninsured individuals.  See CONG. BUDGET OFFICE, KEY ISSUES IN ANALYZING MAJOR HEALTH INSURANCE PROPOSALS 11 (2008) (projecting that the number of

---

[1] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the complaint.  See infra Part II.  However, those portions of the complaint which consist of no more than legal conclusions or a formulaic recitation of the elements of a cause of action have been disregarded.  Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009); Santiago v. Warminster Twp., No. 10-1294, --- F.3d ---, 2010 WL 5071779, at *4 (3d Cir. 2010).

uninsured will rise from at least 45 million in 2009 to 54 million by 2019), *available at* http://www.cbo.gov/ftpdocs/99xx/doc9924/12-18-KeyIssues.pdf.

Reforms that will be ushered in by the new law include expansion of Medicaid, Pub. L. No. 111-148, § 2001, tax incentives for small businesses to purchase insurance for their employees, id. § 1421, and health benefits exchanges. Id. §§ 1311, 1321. Core among the changes are those relating to the availability of health insurance: insurers are prohibited from denying coverage or increasing the price of coverage for individuals with preexisting medical conditions, insurers are prohibited from rescinding coverage or declining to renew coverage based on health status, and insurers are prohibited from capping the amount of coverage available to a policyholder. See id. §§ 1001, 1201. Congress also enacted § 1501 (hereinafter the "individual mandate"). As one of the backbone provisions of the Act, § 1501 mandates that all individuals, subject to certain exceptions,[2] shall maintain "minimum essential coverage" beginning January 1, 2014, or be subject to a penalty included with a taxpayer's tax return. Id. § 1501. By reducing the number of uninsured, Congress found, the individual mandate, together with other Act provisions, "will lower health insurance premiums." Id. § 1501(a)(2)(I). According to Congress, the mandate is essential given the prohibition against the

---

[2] The Act provides exemptions from the minimum coverage provisions for health care sharing ministries and those with religious conscience objections, § 1501(d)(2), individuals who are "not a citizen or national of the United States or an alien lawfully present in the United States," § 1501(d)(3), incarcerated individuals § 1501(d)(4), and certain individuals who cannot afford coverage, § 1501(e).

denial of coverage because "if there were no [individual mandate], many individuals would wait to purchase health insurance until they needed care," thus creating an adverse selection problem or moral hazard. Id. §§ 1501(a)(2)(I), 10106(a). Healthy individuals would wait until they became ill to purchase insurance, at which point, under the Act, insurers would be unable to deny coverage, potentially resulting in implosion of the health care market. Accordingly, Congress concluded that "[the individual mandate] is essential to creating effective health insurance markets in which improved health insurance products that are guaranteed issue and do not exclude coverage of pre-existing conditions can be sold." Id.

Plaintiffs Barbara Goudy-Bachman and Gregory Bachman ("the Bachmans"), residents of Etters, Pennsylvania, (Doc. 1 ¶ 34), instituted this action challenging the individual mandate. The Bachmans are self-employed and currently do not retain health insurance. (Id. ¶¶ 38, 39). Since 2001, the Bachmans have successfully paid all medical expenses incurred and have no outstanding medical bills. (Id. ¶ 43). The Bachmans aver that they do not currently qualify for Medicaid, will not qualify for Medicare before the effective date of the individual mandate, and do not otherwise satisfy an exception to the individual mandate. (Id. ¶¶ 35, 36, 37). The Bachmans allege that they will not purchase health insurance before they are required to do so under the Act (id. ¶ 40), but they intend to comply with all valid laws in effect regarding health care insurance. (Id. ¶ 45). They will not voluntarily choose to break federal law, thus they will not be subject to the penalty provision of the individual mandate. (Id. ¶ 46).

5

The Bachmans aver that they began shopping for a new automobile on or about March 27, 2010 and subsequently identified three suitable vehicle models. (Id. ¶¶ 59-61). They are unable to afford a three-year financing plan on any of the three vehicles because the respective monthly payments would exceed their current monthly disposable income of $450. (See id. ¶¶ 58, 62(a), 64(a), 66(a)). However, the Bachmans claim that they are currently able to afford the monthly payments associated with a five-year financing plan. (Id. ¶¶ 62(b), 64(b), 66(b)). The Bachmans further claim that as of January 1, 2014, when the individual mandate goes into effect, they will no longer be able to satisfy their payment obligations under a five-year financing plan because they will be compelled use their disposable income to purchase qualifying healthcare insurance. (Id.) Hence, the Bachmans allege that "solely as a result of the Individual Mandate's reduction of their disposable monthly income after January 1, 2014" they are unable to purchase a new vehicle. (Id. ¶¶ 63, 65, 67).

On April 12, 2010, the Bachmans filed the instant action facially challenging the constitutionality of § 1501 of the Patient Protection and Affordable Care Act, the individual mandate. The Bachmans seek a declaration that the individual mandate specifically, and the Act as a whole, violate Article I, § 8 of the United States Constitution. They further pray to enjoin enforcement of the individual mandate and the Act against them by the government. The government filed the present motion to dismiss (Doc. 11) on June 14, 2010. The motion has been fully briefed and is now ripe for disposition.

## II.   **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b) enumerates several potential bases for dismissal of an action:  lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, insufficiency of process or service of process, failure to state a claim upon which relief may be granted, and failure to join an indispensable party.  FED. R. CIV. P. 12(b).  When a motion is premised on both lack of subject matter jurisdiction and another Rule 12(b) ground, mootness concerns dictate that the court address the issue of jurisdiction first.  Tolan v. United States, 176 F.R.D. 507, 509 (E.D. Pa. 1998).

Motions under subsection (b)(1), asserting lack of subject matter jurisdiction, take one of two forms.  Parties may levy a "factual" attack, arguing that, although the pleadings facially satisfy jurisdictional prerequisites, one or more of the allegations is untrue, rendering the controversy outside of the court's jurisdiction.  Id.; see also Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  In contrast, a "facial" attack assumes the veracity of the allegations in the complaint but argues that the pleadings fail to present an action within the court's jurisdiction.  Tolan, 176 F.R.D. at 510.  The court should grant such a motion only if it appears with certainty that assertion of jurisdiction would be improper.  Id.; Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000).  If the complaint is merely deficient as pleaded, the court should grant leave to amend before dismissal with prejudice.  See Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

7

The plaintiffs bear the burden to establish the court's subject matter jurisdiction over the matter, however the burden is much lower than that of a Rule 12(b)(6) motion. See Gould Electronics Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). "A claim may be dismissed under Rule 12(b)(1) only if it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" Id. (quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)). In the present matter, the government's motion presents a facial challenge to subject matter jurisdiction under subsection (b)(1) and an objection to the sufficiency of the complaint under subsection (b)(6). The court will consider the issue of jurisdiction first. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).

## III. <u>DISCUSSION</u>

Article III, Section 2 of the United States Constitution confers upon the federal courts the power to adjudicate "Cases" and "Controversies." U.S. CONST. art. I, § 2. "No principle is more fundamental to the judiciary's proper role in our system of government than th[is] constitutional limitation of federal-court jurisdiction . . . ." <u>Raines v. Byrd</u>, 521 U.S. 811, 818 (1997) (quoting <u>Simon v. E. Ky. Welfare Rights Org.</u>, 426 U.S. 26, 37 (1976)) (internal quotations omitted). Absent a case or controversy, the court cannot proceed and must dismiss the action. <u>See</u> <u>Ex parte McCardle</u>, 7 Wall. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it

ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

## A. <u>Standing</u>

To satisfy the bedrock case-or-controversy requirement, and thus confer jurisdiction upon this court, plaintiffs must have standing. <u>See</u> <u>Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 471, 472 (1982); <u>Common Cause of Pennsylvania v. Pennsylvania</u>, 558 F.3d 249, 258 (3d Cir. 2009). Standing is a blend of constitutional and prudential considerations. <u>Valley Forge</u>, 454 U.S. at 471 (citing <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975)). Essentially, the court must be satisfied that 'the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction.' <u>Summers v. Earth Island Inst.</u>, 129 S. Ct. 1142, 1149 (2009) (quoting <u>Warth</u>, 422 U.S. at 498-99 (1975)) (internal quotations omitted). Generalized grievances are not adjudicable. <u>See</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 573-74 (1992) (generalized grievances insufficient to confer standing). Courts determine standing from the circumstances as they exist at the time the complaint is filed. <u>See</u> <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.</u>, 528 U.S. 167, 180 (2000).

The "irreducible constitutional minimum of standing" requires that plaintiffs establish: (1) "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical,'" (2) "a causal connection between the injury and the conduct

9

complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant,'" and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" <u>Lujan</u>, 504 U.S. at 560-61 (internal citations and quotations omitted).  At the motion to dismiss stage, general factual allegations of injury typically suffice.  <u>Common Cause of Pennsylvania</u>, 558 F.3d at 257 (citing <u>Lujan</u>, 504 U.S. at 561).

Economic injury satisfies the injury in fact requirement of standing as long as the harm is concrete and particularized and actual or imminent.  <u>See</u> <u>Ogden Projects, Inc. v. New Morgan Landfill Co., Inc.</u>, 911 F. Supp. 863, 871 (E.D. Pa. 1996) (citing <u>Sierra Club v. Morton</u>, 405 U.S. 727, 733 (1972)).  An injury is particularized when it "affect[s] the plaintiff in a personal and individual way."  <u>Lujan</u>, 504 U.S. at 561 n.1.  To satisfy the actual or imminent requirement, a plaintiff challenging a statute must show that the operation or enforcement of the statute presents a genuine danger of causing a direct injury to her.  <u>Babbitt v. United Farm Workers Nat'l Union</u>, 442 U.S. 289, 298 (1979).  However, a plaintiff need not "await the consummation of threatened injury to obtain preventive relief.  If the injury is certainly impending, that is enough."  <u>Id.</u> (internal quotations and citations omitted).

In the instant matter, the Bachmans assert that they have suffered both economic and non-economic harm as a result of the individual mandate.  (<u>See</u> Doc. 21, at 13-15).  They allege that they are unable to finance a five-year contract on a new vehicle, and must rearrange and evaluate their finances before the mandate

becomes effective. (Id.) The Bachmans aver that the individual mandate, though not currently operative, immediately effects a negative impact on their long-term purchasing power, thereby causing an injury-in-fact. (Id. ¶¶ 29, 31). The Bachmans also assert non-economic harm in the form of deprivation of the use and enjoyment of property—a suitable new car. (Doc. 21, at 15).

The government contends that the Bachmans have failed to establish a cognizable injury-in-fact that is traceable to the Act. The government argues that the individual mandate neither imposes obligations on the Bachmans nor exacts a penalty from them before 2014.[3] The government also asserts that the Bachmans' alleged injury is too remote and speculative, impossible to verify until the individual mandate takes effect. The government reasons that the Act might not affect plaintiffs in 2014, to wit: the Bachmans' circumstances may change such that they will satisfy either the mandate or an exception; the Bachmans may take a job offering insurance; they may qualify for Medicaid; or, they may choose to purchase health insurance before the individual mandate effective date. See (Doc. 13, at 21; Doc. 30, at 14); see also Baldwin v. Sebelius, No. 10CV1033, 2010 WL 3418436 (S.D. Cal. Aug. 27, 2010) (rejecting standing of plaintiffs challenging individual mandate on these grounds).

---

[3] The court is cognizant of efforts currently underway to repeal the Act. See, e.g., Repealing the Job-Killing Health Care Law Act, H.R. 2, 112th Cong. (2011). Obviously, it is not the court's role to speculate on pending legislation and we focus solely on the present enactment.

Recently, the District Court of New Jersey dismissed a challenge to the individual mandate on grounds that a plaintiff lacked standing because he failed to allege an injury-in-fact. See New Jersey Physicians, Inc. v. Obama, Civ. A. No. 10-1489, 2010 WL 5060597 (D.N.J. Dec. 8, 2010). The plaintiff in New Jersey Physicians, Inc. asserted standing on the basis that he did not currently have health insurance and had no plans to purchase insurance in the future. The court held that such claims were "conjectural and speculative," observing that "there is a real possibility that [the plaintiff] will neither have to pay for insurance nor be subject to the penalty." Id. at *4. Importantly, however, the court distinguished this plaintiff from the individual plaintiffs in other health care reform litigation where the courts have found standing, such as the individual plaintiffs in Thomas More Law Center v. Obama, --- F. Supp. 2d ---, 2010 WL 3957805 (E.D. Mich. 2010), who alleged immediate financial pressures to rearrange their affairs and forego spending to pay for insurance, and the individual plaintiffs in Florida v. U.S. Deparment of Health and Human Services, 716 F. Supp. 2d 1120 (N.D. Fla. 2010), who alleged a present injury in being forced to reorder their economic affairs and divert resources from their businesses. See New Jersey Physicians, 2010 WL 5060597, at *4, *6.

The Bachmans' allegations are akin to the individual plaintiffs in Thomas More and Florida. The Bachmans allege immediate economic pressure as a direct result of the individual mandate. The Bachmans' decision to forego the purchase of a new vehicle in anticipation of future budgetary needs is not rooted in some remote contingency, but on a law with manifest budgetary implications in 2014.

12

See <u>Liberty University, Inc. v. Geithner</u>, --- F. Supp. 2d ---, 2010 WL 4860299, at *5 (W.D. Va. 2010) (finding that "[t]he present or near-future costs of complying with a statute that has not yet gone into effect can be an injury in fact sufficient to confer standing").  The economic impact is immediate: the Bachmans must forego the purchase of a new vehicle and rearrange their finances in anticipation of the statutory requirement that they purchase insurance.  Although it is certainly true that the Bachman's circumstances may change, they must undertake financial planning and budgeting decisions now in preparation for the implementation of the individual mandate.  <u>See id.</u> at *6 ("Although Defendants are correct that there is some uncertainty whether, in 2014, Plaintiffs will continue to fall under the auspices of the Act, Plaintiffs' allegations, which [the court] take[s] as true, show that they have good reason to believe they will.").

The government's argument that "[t]he minimum coverage provision does not require plaintiffs to take any action now" simply falls flat.  (<u>See</u> Doc. 13, at 23). As the Eastern District of Michigan recently explained, "[t]he economic burden due to the Individual Mandate is felt by plaintiffs regardless of their specific financial behavior. . . . [T]he government is requiring plaintiffs to undertake an expenditure, for which the government must anticipate that significant financial planning will be required.  That financial planning must take place well in advance of the actual purchase of insurance in 2014."  <u>Thomas More Law Center</u>, --- F. Supp. 2d at ---, 2010 WL 3952805, at *4.

The government also contends that any injury sustained by the Bachmans' is not "fairly traceable" to a challenged provision because that injury "stems not from the operation of [the provision] but from [plaintiffs'] own . . . personal choice." McConnell v. Fed. Election Comm'n, 540 U.S. 93, 228 (2003). The court disagrees and finds that the alleged injuries are fairly traceable to the individual mandate provision. See Thomas More Law Center, --- F. Supp. 2d at ---, 2010 WL 3952805, at *4 (finding that "[p]laintiffs' decision to forego certain spending today, so they will have the funds to pay for health insurance when the Individual Mandate takes effect in 2014, are injuries fairly traceable to the Act for the purposes of conferring standing"). The mandate will likely require a significant financial investment by the Bachmans. Changes in their family budget are required now and are reasonably traceable to the mandate.

The Bachmans have no crystal ball. They must engage in financial preparation and reduced spending based upon their present circumstances in light of the impending effective date of the individual mandate. See Liberty University Inc., --- F. Supp. 2d at ---, 2010 WL 4860299 at *6. The complaint plausibly sets forth an injury-in-fact that is imminent and the direct result of the individual mandate. In light of the reduced burden at the motion to dismiss stage, the court finds the Bachmans satisfy the constitutional minimum for standing.

**B.**     **Ripeness**

The determination of standing, however, does not end the court's inquiry into the case or controversy requirement. The justiciability doctrine of ripeness

14

must also be satisfied. Ripeness is both an Article III limitation and a prudential limitation. See Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 733 n.7 (1997); Reno v. Catholic Soc. Servs. Inc., 509 U.S. 43, 57 n.18 (1993). The ripeness inquiry concerns "whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." Peachlum v. City of York, 333 F.3d 429, 433 (3d Cir. 2003) (citations omitted).

The Supreme Court has noted two fundamental considerations in the ripeness analysis: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967), *overruled on other grounds by* Califano v. Sanders, 430 U.S. 99, 105 (1977). When a plaintiff seeks a declaratory judgment in a pre-enforcement review of a statute, ripeness concerns dictate that: (1) the parties have sufficiently adverse legal interests; (2) the facts are sufficiently concrete to allow for a conclusive legal judgment; and (3) the judgment renders practical help to the parties. See Peachlum, 333 F.3d at 435 (citing Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.3d 643, 647 (3d Cir. 1990)). Although, the exact point at which a matter becomes ripe is by no means expressly delineated, NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 (3d Cir. 2001), it is clear that a dispute is not ripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States 523 U.S. 296, 300 (1998)

(quotations and citations omitted); see also Doe v. County of Centre, 242 F.3d 437, 453 (3d Cir. 2001).

The government contends that the instant dispute is not ripe because the Bachmans do not face a substantial threat of real harm. Similar to their standing argument, the government avers that the Bachmans' claims rest on contingent future events. (Doc. 13, at 25-26); Id. at 26 (stating that "the facts that will determine whether they might suffer a cognizable injury when the minimum coverage provision goes into effect in 2014 are unknown"). The government insists that the Bachmans face no immediate harm or hardship because the Act does not require them to engage in or refrain from any conduct before 2014. (Id. at 27).

This contention is equally unavailing. Congress deems the individual mandate critical to the efficacy of its health care reform enactment. Pub. L. No. 111-148, §§ 1501(a)(2)(I), 10106(a), 124 Stat. 119 (2010). The Supreme Court has made clear that "[w]here the inevitability of the operation of a statute against [plaintiffs] is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions come into effect." Reg'l Rail Reorganization Act Cases, 419 U.S. 102, 143 (1974). Prudent citizens must alter their spending habits *before* 2014 to ensure their compliance with the individual mandate requirement. See Florida, 716 F. Supp. 2d at 1149-150 (concluding that challenge to the health care act was ripe and the impact of the individual mandate "immediate or very near" because "the uninsured will need to research available insurance plans, find one that meets their needs, and begin budgeting

16

accordingly"); <u>Liberty University, Inc.</u>, --- F. Supp. 2d at ---, 2010 WL 4860299, at *8 (same).

When a pre-enforcement challenge to a statute hinges predominantly on legal questions, the trial court may make a conclusive determination, assuming satisfaction of standing requirements. <u>Pittsburgh Mack Sales & Servs., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66</u>, 580 F.3d 185, 191 (3d Cir. 2009) (citing <u>Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio</u>, 40 F.3d 1454, 1468 (3d Cir. 1994)). In the instant matter, the Bachmans raise a facial challenge to the constitutionality of the individual mandate, disputing Congress's power to pass the Act under the Commerce Clause. Neither party suggests that a factual record will inform the court's legal analysis of the commerce clause issue. <u>See</u> <u>Pic-A-State Pa., Inc. v. Reno</u>, 76 F.3d 1294, 1300 (3d Cir. 1996) (development of factual record unnecessary in case presenting purely legal question of scope of Congress's power under the Commerce Clause). Moreover, the public interest is best served by an expeditious resolution of the constitutionality of the Act. <u>See</u> <u>Thomas v. Union Carbide Agr. Prods. Co.</u>, 473 U.S. 568, 582 (1985). In light of the foregoing and the court's determination on standing, the instant dispute is ripe for adjudication. <u>See</u> <u>also</u> <u>Cuccinelli</u>, 702 F. Supp. 2d at 607-08 (health care reform challenge ripe); <u>Liberty University, Inc.</u>, --- F. Supp. 2d at ---, 2010 WL 4860299, at *8 (same); <u>Thomas More Law Center</u>, --- F. Supp. 2d at ---, 2010 WL 3952805, at *5 (same).

**C.** **Anti-Injunction Act**

The government insists that this court lacks jurisdiction for an additional reason, alleging that the Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421, bars this pre-enforcement suit. The AIA provides in pertinent part that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." Id. § 7421(a). The purposes of the AIA are to preserve the government's need to promptly collect lawful taxes and revenue with minimal judicial interference and to compel challenges to disputed exactions to be raised in a suit for a refund. See Bob Jones Univ. v. Simon, 416 U.S. 725, 736 (1974). Under the plain language of the statute, a suit to enjoin the collection of *anyone's* taxes is barred, not merely an attempt to enjoin the collection of one's own taxes. 26 U.S.C. § 7421(a); Alexander v. "Americans United" Inc., 416 U.S. 752, 760 (1974). Furthermore, the AIA cannot be avoided by raising constitutional claims. Alexander, 416 U.S. at 759. Even if the tax is alleged to be unconstitutional, "the taxpayer must succumb to an unconstitutional tax, and seek recourse only after it has been unlawfully exacted." United States v. Clintwood Elkhorn Min. Co., 553 U.S. 1, 10 (2008).

The government points to the enforcement mechanism for the individual mandate—the penalty to be included with an individual's tax return—and argues that the individual mandate cannot be separated from the penalty provision. As a result, the government asserts, any action challenging the individual mandate prior

to its enforcement violates the AIA because, if successful, the government would be unable to collect the penalty.  The government further submits that it is of no import whether Congress labels the enforcement mechanism a "penalty" or a "tax" because the penalty is to be "assessed and collected in the same manner as an assessable penalty" under the Internal Revenue Code, thus subjecting it to the AIA pre-enforcement bar.  (Doc. 13, at 24); 26 U.S.C. § 5000A(g)(1); 26 U.S.C. § 6671(a).  Finally, the government argues that the penalty is imposed on taxpayers through their tax returns and is clearly located in the tax code, thereby underscoring applicability of the AIA.

The Bachmans argue that the AIA is inapplicable to their lawsuit because they do not dispute the penalty or its collection; their sole challenge is to the individual mandate.  (Doc. 21, at 19).  The individual mandate, they counter, is an obligation to purchase insurance and does not implicate the transfer of funds to the federal government.  (Id.)  The requirement to purchase insurance, the Bachmans allege, is the source of their injury.  The Bachmans intend to comply with the individual mandate and assert that they will never be subject to the penalty.  (Id. at 20).

The government relies upon decisions of other circuits which have held that the AIA proscription includes suits that, if successful, would restrain government activities culminating in the assessment and collection of taxes.  See Judicial Watch, Inc. v. Rossotii, 317 F.3d 401, 404 (4th Cir. 2003); Lowrie v. United States, 824 F.2d 827 (10th Cir. 1987); Dickens v. United States, 671 F.2d 969 (6th Cir. 1982).  However,

these cases are distinguishable from the instant matter. In <u>Lowrie</u>, the Tenth

Circuit found the AIA applicable in a suit in which plaintiff sought the return from

the IRS of business records seized in a search and seizure that plaintiff claimed was

unconstitutional. Notably, however, the <u>Lowrie</u> plaintiff admitted that he brought

suit for the sole purpose of avoiding an IRS enforcement action. <u>Lowrie</u>, 824 F.2d at

831; <u>see</u> <u>also</u> <u>Bob Jones Univ.</u>, 416 U.S. at 738 (concluding that there was "little

doubt that a primary purpose of this lawsuit is to prevent the [IRS] from assessing

and collecting income taxes"); <u>Alexander</u>, 416 U.S. at 760 (stating that "[u]nder any

reasonable construction of the statutory term 'purpose' the objective of this suit was

to restrain the assessment and collection of taxes from respondent's contributors").

With similar logic, the Fourth Circuit in <u>Judicial Watch</u> held that the AIA barred

injunctive relief from a proposed audit by the IRS. 317 F.3d 401; <u>see</u> <u>also</u> <u>Dickens</u>,

671 F.2d 969 (AIA barred suit for injunction against IRS to enjoin use for

assessment purposes of information lawfully obtained by the FBI pursuant to a

search warrant); <u>Church of Scientology of California v. United States</u>, 920 F.2d 1481

(9th Cir. 1990) (AIA barred injunctive relief against IRS attempts to collect

deficiencies in employee withholding taxes).

All of the cases upon which the government relies involve challenges to

activities inextricably tied to the assessment or collection of taxes, such as audits

and investigations by the IRS, and attempts to collect taxes by the IRS. In the

instant matter, the Bachmans do not seek to prevent the assessment or collection of

any tax, to prevent an investigation or audit with respect to the assessment or

collection of any tax, or even to prevent any action by the IRS at all.  See Thomas

More Law Center, --- F. Supp. 2d at ---, 2010 WL 3952805, at *5-6 (holding the AIA

inapplicable where the IRS has made no attempt to collect or otherwise act

affirmatively to collect a tax).  They seek to enjoin the government from forcing

them to purchase health insurance, a purpose completely unrelated to the

assessment or collection of taxes.  The court finds that the individual mandate itself

is not a tax, nor is it intimately connected with the assessment or collection of a tax.

Therefore, it does not implicate the AIA bar.  See also id. at *6 ("[T]he provision[] of

the Health Care Reform Act at issue here . . . ha[s] nothing to do with the

assessment or collection of taxes.  The declaratory relief sought in this case is

primarily directed at the statutory requirement that individuals obtain health

insurance coverage as provided.  The plaintiffs have a right to a court

determination of the constitutional authority of Congress to enact the statute in the

first place.").  But see Florida, 716 F. Supp. 2d at 1131 n.3, 1143-44 (rejecting

argument that AIA inapplicable because plaintiffs challenge only the individual

mandate but nonetheless concluding the AIA does not apply because the penalty is

not a tax).

Alternatively, the court finds the AIA inapplicable because the penalty is

neither a tax, nor otherwise subject to the AIA.  "[A] tax is a pecuniary burden laid

upon individuals or property for the purpose of supporting the Government."

United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 224

(1996).  A penalty, on the other hand, connotes a sanction or a punishment for an

unlawful act or omission.  See id.; United States v. LaFranca, 282 U.S. 568, 572

(1931) ("A tax is an enforced contribution to provide for the support of government;

a penalty, as the word is here used, is an exaction imposed by statute as

punishment for an unlawful act.").  As the Supreme Court succinctly observed in

United States v. LaFranca, [t]he two words [tax vs. penalty] are not interchangeable

. . . . and if an exaction [is] clearly a penalty it cannot be converted into a tax by the

simple expedient of calling it such."  LaFranca, 282 U.S. at 572.

Looking to the plain language of the Act, Congress used the word "penalty"

in § 1501, a departure from early versions of the bill which used the word "tax."  See

Florida, 716 F. Supp. 2d at 1134 (discussing earlier House and Senate versions of

health care reform legislation referring to the penalty provision as a tax).  The

district court in Florida explained:

> Congress's conspicuous decision to not use the term "tax" in the Act
> when referring to the exaction (as it had done in at least three earlier
> incarnations of the legislation) is significant.  "'Few principles of
> statutory construction are more compelling than the proposition that
> Congress does not intend *sub silentio* to enact statutory language that
> it has earlier discarded in favor of other language.'" INS v. Cardoza-
> Fonseca, 480 U.S. 421, 442 (1987).  Thus, "[w]here Congress includes
> [certain] language in an earlier version of a bill but deletes it prior to
> enactment, it may be presumed that the [omitted text] was not
> intended.'" Russello v. United States, 464 U.S. 16, 23-24 (1983).

716 F. Supp. 2d at 1134-35.  In addition, Congress exhibited its familiarity with how

to impose a tax by the inclusion of taxes, properly labeled as such, in other sections

of the Act.  See Pub. L. No. 111-148, § 1405 (Excise Tax on Medical Device

Manufacturers); id. § 9001 (Excise Tax on High Cost Employer-Sponsored Health

Coverage); id. § 9015 (Additional Hospital Insurance Tax on High-Income Taxpayers; id. § 10907 (Excise Tax on Indoor Tanning Services). As the Supreme Court has stated, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Duncan v. Walker, 533 U.S. 167, 173 (2001) (citations and quotations omitted).

The placement of the penalty provision in the tax code under the heading "Miscellaneous Excise Taxes" is not conclusive as to the characterization of the penalty. In fact the Code itself cautions: "No inference, implication, or presumption of legislative construction shall be drawn or made by reason of the location or grouping of any particular section or provision or portion of this title." 26 U.S.C. § 7806(b); see also Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. at 222-23. Significantly, no criminal penalties will be imposed with respect to the failure to pay the penalty, nor are liens or levies to be utilized. See 26 U.S.C. § 5000A(g)(2). Moreover, although taxes are typically revenue raising, the penalty is not included among the "Revenue Provisions" of the Act located in Title IX. See also Florida, 716 F. Supp. 2d at 1137-41 (discussing the lack of any statutorily identified revenue-generating purpose for the individual mandate and penalty).

Simply put, and as the district court in Florida quite convincingly noted, to call the penalty provision a tax would require the court to ignore that Congress:

(i) specifically changed the term in previous incarnations of the statute from "tax" to "penalty;"
(ii) used the term "tax" in describing the several other exactions provided for in the Act;
(iii) specifically relied on and identified its Commerce Clause power and not its taxing power;
(iv) eliminated traditional IRS enforcement methods for the failure to pay the "tax;" and
(v) failed to identify in the legislation any revenue that would be raised from it, notwithstanding that at least seventeen other revenue-generating provisions were specifically so identified.

Id. at 1139.  Regardless of whether the Bachmans' challenge is considered to apply only to the individual mandate or to both the mandate and tax by virtue of their tandem operation, the AIA is inapplicable.  The penalty is not a tax.

**IV.**  **Conclusion**

The court is satisfied that jurisdiction is proper.  A separate opinion will address the remaining issue: whether the Bachamans have stated a plausible claim that the individual mandate exceeds Congress's authority under the Commerce Clause of the United States Constitution.

 S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:       January 24, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARBARA GOUDY-BACHMAN** and | : | **CIVIL ACTION NO. 1:10-CV-763** |
| **GREGORY BACHMAN** | : | |
| | : | **(Judge Conner)** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **UNITED STATES DEPARTMENT OF** | : | |
| **HEATH AND HUMAN SERVICES,** | : | |
| **KATHLEEN SEBELIUS, in her official** | : | |
| **capacity as the Secretary of the United** | : | |
| **States Department of Health and** | : | |
| **Human Services; UNITED STATES** | : | |
| **DEPARTMENT OF THE TREASURY,** | : | |
| **and TIMOTHY F. GEITHNER, in his** | : | |
| **official capacity as Secretary of the** | : | |
| **United States Department of the** | : | |
| **Treasury** | : | |
| | : | |
| Defendants | : | |

## ORDER

AND NOW, this 24th day of January, 2011 upon consideration of Defendants'

motion to dismiss (Doc. 11), and for the reasons set forth in the accompanying

memorandum, it is hereby ORDERED that defendant's motion is DENIED with

respect to the Federal Rule of Civil Procedure 12(b)(1) claims.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge